**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CONVEY IT, INC., :

                Plaintiff,

-vs-

DANIEL CHATFIELD, *et al.,*

                Defendants. :

Case No. 3:10-cv-457

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendants' Motion for Partial Judgment on the Pleadings. (Doc. No. 32). The parties have fully briefed the issues, (*Id.,* Doc. 34, 37, 40, 44). This case was referred to the Magistrate Judge for pretrial management in the Preliminary Pretrial Order (Doc. No. 31, PageID 950-951). The Motion is made under Fed. R. Civ. P. 12(c) and is a dispositive motion, requiring a recommendation rather than a decision from a magistrate judge to whom it has been referred. 28 U.S.C. §§ 636(b)(1)(A) and (B); Fed. R. Civ. P. 72(b).

The relevant pleadings are the Second Amended Complaint (Doc. No. 24; the "Second AC") and Defendants' Answer to that pleading (Doc. No. 26).

The Second Amended Complaint was previously before Judge Rice on Defendants' Motion to Dismiss. He briefly described this action as follows:

> In this litigation, Plaintiff Convey It, Inc. ("Plaintiff" or "Convey It"), alleges that for a number of years it has safely operated the Springfield Salt Terminal ("SST") in Clark County, Ohio. [Footnote omitted]. According to Plaintiff, Defendants Daniel Chatfield ("Chatfield"), Charles Patterson ("Patterson") and the Board of

Health of the Clark County Combined Health District (the "Board") have engaged in a false media campaign to impugn its reputation and put it out of business. [FN2].

> FN2 Chatfield and Patterson, alleged to be employees of the Board (*see* Doc. #24 at ¶¶ 4-5), have been sued in their individual and official capacities.

\* \* \*

The basic facts giving rise to this litigation are not greatly in dispute. In [sic] September 24, 2003, the Plaintiff leased real property, located in Clark County, Ohio, for the purpose [of] operating the Springfield Salt Terminal ("SST"). Doc. #24 at ¶ 7. Plaintiff filed with the Ohio Environmental Protection Agency ("Ohio EPA"), in 2004, a Notice of Intent for Coverage under Ohio EPA General Permit ("Notice of Intent") and a Storm Water Pollution Prevention Plan ("SWPPP"). Id. at ¶ 8. [FN4]. The Ohio EPA accepted Plaintiff under its General Permit No. OHR000004 and issued Plaintiff Individual Permit 1GR00664\*DG ("Permit"). Id. at ¶ 9. The Plaintiff alleges that the Defendants violated § 6111.04(A) of the Ohio Revised Code. See Doc. # 24 at ¶ 10. According to Plaintiff, that statutory provision "expressly and unambiguously exempted permits such as Plaintiff's from "(a) being considered a public nuisance (b) being considered in violation of Ohio law prohibiting pollution of the waters of this state." Id. The Court agrees with Plaintiff's interpretation of the statute.

Throughout the remainder of its Second Amended Complaint (Doc. # 24), the Plaintiff sets forth allegations concerning its operation of the SST, including that it operated in compliance with its permit and stored only road salt at its facility; that it did not discharge any salt into the surface water of Ohio during its operation of the SST; that it did not alter the content of the road salt delivered to it; that sodium chloride is a commonly used material found in most households and is useful to state and local governments to de-ice roads; that no binding health-based standard governing sodium chloride in drinking water exists; that the location of the SST was beneficial from its business point of vies; that the location of the SST was good from an environmental prospective, given that it was located outside the City of Springfield's well protective area; and that throughout the operation of the SST, neither the Springfield water department nor residents of that municipality complained of the location of the SST. Id. at ¶¶ 11-24. These allegations are not separately actionable.

2

> More importantly, they do not set forth independent claims for relief from one or more or all of the Defendants. [FN5]. Plaintiff also explains how it received and stored the shipments of road salt it was using at the SST. Id. at ¶ 14.
>
>> FN 4  These documents are attached to Plaintiff's Second Amended Complaint (Doc. #24) as Exhibit 3.
>>
>> FN5  The remaining factual allegations constitute a detailed restatement of the horrible things that Defendant has done to it. This Court does not interpret those allegations as setting forth claims, different from Plaintiff's claims for relief which are expressly set forth in that pleading immediately thereafter.

("Decision and Entry," Doc. No. 27, PageID 918-19, 923-25).

Motions for judgment on the pleadings are to be adjudicated using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). Judge Rice set forth those standards in the Decision and Entry. In addition, the Sixth Circuit recently held that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face", *Savoie v. Martin*, ___F.3d ___, 2012 WL 695531 *2 (6th Cir. Mar. 6, 2012), quoting *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dept. of Educ.,* 615 F.3d 622, 627 (6th Cir. 2010), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007), and that "[a]ll well-pled facts in the complaint must be accepted as true." *Savoie, supra,* citing, *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 629 (6th Cir. 2009), citing *Ashcroft v. Iqbal,* 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009).

In the Decision and Entry, Judge Rice dismissed all claims in the Second Amended Complaint except claims for violation of the Contract Clause, tortious interference with contractual and business relationships, false light invasion of privacy, and civil conspiracy. Defendants now

3

seek a judgment of dismissal on Count II of the Second Amended Complaint, the Contract Clause claim. Relevant allegations in the Second Amended Complaint are as follows:

At the times relevant to Convey It's claims, Mr. Chatfield was the Director of Environmental Health for the Board of Health and Mr. Patterson was the Commissioner of the Board of Health. (Second AC, Doc. No. 24 ¶¶ 4, 5, PageID 759).

Convey It entered into a lease agreement with the West Central Ohio Port Authority ("WESTCO") in 2003, for a site to locate their Springfield Salt Terminal ("SST") operations and the parties renewed the lease in 2007 for a five-year term. (Second AC, Doc. No. 24, ¶ 7, PageID 760). In addition to its lease with WESTCO, Convey It had contracts with the Indiana & Ohio Railroad and numerous customers to receive and distribute salt from the SST, and utilities and other service providers related to the permitted operations at the SST. *Id.* at ¶ 62, PageID 772. Defendants were aware of those contracts. *Id.* at ¶ 63.

On or about June 17, 2010, Defendant Board of Health passed a resolution declaring the SST a public nuisance. *Id.* at ¶ 48, PageID 769; *see also* PageID 888 (the "Resolution"). The Board ordered Convey It to permanently cease using the SST for salt distribution and cover the SST, even though all of the salt had been removed from the site. *Id.* The Board also ordered Convey It to undertake further unspecified action as directed by the Ohio EPA. *Id.*

Defendants essentially argue that Convey It's Contract Clause claim fails because they did not plead a change in state law or that the Board acted legislatively or that Defendants Chatfield and Patterson are voting members of the Board (Motion, Doc. No. 32, PageID 953). In opposition, Convey It argues that the Resolution effectively repealed the Ohio General Assembly's express exemption of facilities such at the SST from being declared a public nuisance, resulting in a change

4

in state law, and that such action was legislative in nature (Memo. in Opp., Doc. No. 34).

Article I, § 10 of the United States Constitution provides in pertinent part: "No State shall ... pass any ... Law impairing the Obligation of Contracts." The Contract Clause is violated and a contract "impaired" where there is a contractual relationship, a change in law impairs that contractual relationship, and the impairment is substantial. *McGuire v. Ameritech Services, Inc.,* 253 F. Supp.2d 988,1005 (S. D. Ohio 2003) (Rice, C.J.), citing *Wojcik v. City of Romulus,* 257 F.3d 600, 612 (6th Cir. 2001); *see also, General Motors Corp. v. Romein,* 503 U.S. 181, 186 (1992). The Contract Clause applies only to legislative acts of government. *McGuire,* 253 F. Supp.2d at 1006, n. 16, *citing Barrows v. Jackson,* 346 U.S. 249, 260 (1953).

Convey It alleges it had contracts with Westco, the Indiana and Ohio Railroad, numerous customers to receive and distribute salt from the SST, and utilities and other service providers related to the SST. (Second AC, Doc. No. 24, ¶ 62, PageID 772.) For purposes of the instant Motion, Defendants do not dispute these contracts existed. The question is whether there was a change in law which impaired these contractual relationships. The resolution of that question hinges on the characterization of the Board's Resolution declaring the SST a nuisance. *See Wojcik,* 257 F.3d at 612.

Not all acts of the governing bodies of Ohio political subdivisions are "legislative." The mere passage of a resolution is not *per se* a legislative act; nor is it true that municipal resolutions can never be deemed legislative acts. *Wojcik, supra.* Instead determining whether a resolution is a legislative act depends upon its content:

> Although a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity. Rather, "[w]hether actions ... are, in law and fact, an exercise of legislative power depends not on their form but upon

5

> 'whether they contain matter which is properly to be regarded as legislative in its character and effect'". *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983)(discussing Congressional action)(citation omitted). "The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct." *Yakus v. United States,* 321 U.S. 414, 424, 64 S.Ct. 660, 667, 88 L.Ed 834 (1944)(citation omitted).

*Wojcik,* 257 F.3d at 612, *quoting Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 580 (9th Cir. 1984). Simply stated, a legislative act promulgates a defined and binding rule of conduct while an administrative act applies the defined and binding rule of conduct already in place.

The resolution, R 53-10, which the Board passed at its June 17, 2010, meeting provides in part:

> A resolution declaring the exposed salt, contaminated soil, and contaminated groundwater on and emanating from the With a Grain of Salt storage facility located at 348 Tremont City Road, operated by Convey It, Inc., and owned by the West Central Ohio Port Authority, a public health nuisance under the authority of Ohio Revised Code 3707.01 and further ordering Convey It, Inc., abate the nuisance conditions. ...

PageID 888.

Ohio Revised Code § 3707.01 provides that the board of health of a city or general health district "shall abate and remove all nuisances within its jurisdiction" and that it may, by order, compel the owners to abate and remove any nuisance. It provides further that, "When a ... premises ... or the ... drainage ... thereof is, in the opinion of the board, in a condition dangerous to life or health ... the board may declare it a public nuisance ...."[1]. *Id.* Similarly, Ohio Revised Code § 3709.21 provides that the board of health of a general health district may make such orders and

---

[1] GC 4420, 4421, predecessor to O.R.C. § 3707.01, became effective Oct. 1, 1953.

6

regulations that are necessary for, *inter alia,* the prevention, abatement, or suppression of nuisances.[2]

These statutes authorize boards of health to act administratively, that is, to declare that a particular location is a public nuisance, to apply the law defining public nuisances to a particular site. That is what Defendant Board did in adopting the Resolution. It did not adopt a general policy that storing road de-icing salt in general or in a number of described ways will always be a public nuisance in Clark County. Rather, it found that this particular site at this particular time is a public nuisance.

In its Memorandum in Opposition, Convey It repeatedly argues that the Resolution "effectively repeals" Ohio Revised Code § 6111.04(A). Judge Rice has already agreed with Convey It's interpretation of that statute as granting an exemption from being declared a public nuisance, i.e. that it "expressly and unambiguously exempted permits such as Plaintiff's from "(a) being considered a public nuisance (b) being considered in violation of Ohio law prohibiting pollution of the waters of this state." (Decision and Entry, Doc. No. 27, PageID 924, quoting Second AC, ¶ 10.) But the fact that a board of health resolution may violate a state law does not mean that the resolution has "effectively repealed" the state law. Indeed, it is axiomatic that local government bodies do not have the authority under the Ohio Constitution to repeal acts of the General Assembly.

Convey It also attempts to show this was a legislative act by quoting a communication from an employee of the Ohio EPA to the City of Springfield that a "legislative fix" was needed (Memo. in Opp., Doc. No. 34, PageID 967.) Lifting this language from context and repeating it numerous times, Convey It argues that the Resolution must be legislative because that is what the Board eventually did in response to the communication. *Id.* at 967, 968, 970. When the language is

---

[2] GC 1261-42, predecessor to O.R.C. § 3709.21, became effective Oct. 1, 1953.

examined in the context from which it was lifted, it is clear that the Ohio EPA official was talking about the need for a "legislative fix" from the Ohio General Assembly, predicting that such a "fix isn't going to happen anytime soon that would give the OEPA more clout,"[3] and recommending local action instead.

Convey It also relies on *Weber v. Board of Health, Butler County,* 148 Ohio St. 389, ¶ 3 of the Syllabus (1947). In that case in addressing GC 1261-42, the predecessor to § 3709.21, the Ohio Supreme Court determined that the board of health of a general health district has a wide latitude in making and enforcing rules and regulations for the public health, the prevention or restriction of disease, and the prevention, abatement or suppression of nuisance, but when such board passes a resolution which prohibits a business not unlawful in itself and which is susceptible to regulations which will prevent it from becoming either a health menace or a nuisance, such board transcends its administrative rule-making power and exercises legislative functions in violation of Section 1 of Article II of the Constitution of Ohio. Convey It concludes from *Weber* that what the Board did in the Resolution must be "legislative" in nature.

In *Weber* the Ohio Supreme Court held that the regulation in question – which prohibited hog feeding on transported garbage anywhere in Butler County – violated the non-delegation doctrine which it found to be implicit in the Ohio Constitution. No Contract Clause issue was involved in *Weber*, and the Ohio Supreme Court did not purport to be deciding whether the Butler County Board of Health was acting legislatively for purposes of the Contract Clause. But the contrast to the present case is instructive. There the Butler County Board of Health purported to prohibit an entire business throughout the County: raising hogs with garbage transported onto the

---

[3] Exhibit 7 to Second AC, Doc. No. 24.

hog-raising farm. The Board of Health Resolution in this case does no such thing. It does not purport to prohibit the business of storing de-icing salt, whether in open piles or in any other manner. Rather, it announces its conclusion that this particular operation is a public nuisance.

Dismissing Convey It's Contract Clause claim does not leave it without a remedy for the apparent conflict between the Resolution and Ohio Revised Code § 6111.04. Ohio Revised Code § 2506.01, et seq., provide a right to appeal to the Common Pleas Court from an administrative decision of a local governmental body and Convey It has filed such an appeal (Second AC, Doc. No. 24, ¶ 49, PageID 769.) Resolving the public policy conflict between the need to store readily accessible de-icing salt for winter emergencies and preventing such salt from polluting the waters of Ohio is a matter for the Ohio courts or for the Ohio General Assembly.

Because Defendant Board's declaration that the SST was a public nuisance was an administrative rather than a legislative act, Count II of the Second Amended Complaint does not state a claim for relief under the Contract Clause against Defendant Board or against Defendants Chatfield and Patterson in their official capacities. Nor has Convey It offered any authority for the proposition that the individual Defendants could be held liable under 42 U.S.C. § 1983 for violation the Contract Clause. Therefore, the Motion for Partial Judgment on the pleadings should be granted.

March 31, 2012.

s/ **Michael R. Merz**<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).