**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CONVEY IT, INC.,                               :

                 Plaintiff,

       -vs-

DANIEL CHATFIELD, *et al.,*

                Defendants.           :

Case No. 3:10-cv-457

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

---

**SUPPLEMENTAL REPORT AND RECOMMENDATIONS**

---

     This case is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. No. 32). Additional motion papers are at Doc. Nos. 34, 35, 40, and 44. After the Magistrate Judge filed a Report and Recommendations (Doc. No. 45), Plaintiff filed Objections (Doc. No. 46), Defendants filed a Response (Doc. No. 49), the Motion was recommitted (Doc. No. 50), and oral argument was held at Plaintiff's request. The oral argument has now been transcribed (Doc. No. 52) and the Motion is ripe on recommittal.

     In his decision on Defendants' Motion to Dismiss, Judge Rice described this litigation as follows:

> In this litigation, Plaintiff Convey It, Inc. ("Plaintiff" or "Convey It"), alleges that for a number of years it has safely operated the Springfield Salt Terminal ("SST") in Clark County, Ohio. [Footnote omitted]. According to Plaintiff, Defendants Daniel Chatfield

1

("Chatfield"), Charles Patterson ("Patterson") and the Board of Health of the Clark County Combined Health District (the "Board") have engaged in a false media campaign to impugn its reputation and put it out of business. [FN2].

FN2 Chatfield and Patterson, alleged to be employees of the Board (*see* Doc. #24 at ¶¶ 4-5), have been sued in their individual and official capacities.

* * *

The basic facts giving rise to this litigation are not greatly in dispute. In [sic] September 24, 2003, the Plaintiff leased real property, located in Clark County, Ohio, for the purpose [of] operating the Springfield Salt Terminal ("SST"). Doc. #24 at ¶ 7. Plaintiff filed with the Ohio Environmental Protection Agency ("Ohio EPA"), in 2004, a Notice of Intent for Coverage under Ohio EPA General Permit ("Notice of Intent") and a Storm Water Pollution Prevention Plan ("SWPPP"). Id. at ¶ 8. [FN4]. The Ohio EPA accepted Plaintiff under its General Permit No. OHR000004 and issued Plaintiff Individual Permit 1GR00664*DG ("Permit"). Id. at ¶ 9. The Plaintiff alleges that the Defendants violated § 6111.04(A) of the Ohio Revised Code. See Doc. # 24 at ¶ 10. According to Plaintiff, that statutory provision "expressly and unambiguously exempted permits such as Plaintiff's from "(a) being considered a public nuisance (b) being considered in violation of Ohio law prohibiting pollution of the waters of this state." Id. The Court agrees with Plaintiff's interpretation of the statute.

Throughout the remainder of its Second Amended Complaint (Doc. # 24), the Plaintiff sets forth allegations concerning its operation of the SST, including that it operated in compliance with its permit and stored only road salt at its facility; that it did not discharge any salt into the surface water of Ohio during its operation of the SST; that it did not alter the content of the road salt delivered to it; that sodium chloride is a commonly used material found in most households and is useful to state and local governments to de-ice roads; that no binding health-based standard governing sodium chloride in drinking water exists; that the location of the SST was beneficial from its business point of vies [sic]; that the location of the SST was good from an environmental prospective, given that it was located outside the City of Springfield's well protective area; and that throughout the operation of the SST, neither the Springfield water department nor residents of that municipality complained of the location of the SST. Id. at ¶¶ 11-24. These allegations are not separately actionable.

2

More importantly, they do not set forth independent claims for relief from one or more or all of the Defendants. [FN5]. Plaintiff also explains how it received and stored the shipments of road salt it was using at the SST. Id. at ¶ 14.

FN 4 These documents are attached to Plaintiff's Second Amended Complaint (Doc. #24) as Exhibit 3.

FN5 The remaining factual allegations constitute a detailed restatement of the horrible things that Defendant has done to it. This Court does not interpret those allegations as setting forth claims, different from Plaintiff's claims for relief which are expressly set forth in that pleading  immediately thereafter.

(Decision and Entry, Doc. No. 27, PageID 918-19, 923-25.)  In this Decision, Judge Rice dismissed all claims in the Second Amended Complaint except claims for violation of the Contract Clause, tortious interference with contractual and business relationships, false light invasion of privacy, and civil conspiracy.  The instant Motion addresses only the Contract Clause claim, Count II of the Second Amended Complaint, as it is directed at Defendant Board of Health and Messrs. Chatfield and Patterson in their official capacities.

Defendants argue that Count II does not state a claim for relief under the Contracts Clause because: (1) Plaintiff did not plead any change in state law which interfered with its contracts;  (2) Defendants Board of Health did not act legislatively when it declared the SST to be a public nuisance; and (3) Defendants Chatfield and Patterson are not alleged to be voting members of the Board of Health (Motion, Doc. No. 32, PageID 953).

The Report and Recommendations recommended granting the Motion in its entirety upon the conclusion that the complained-of board of Health Resolution did not change state law and was administrative rather than legislative in character.  It also noted Convey It offered no authority for

holding Chatfield and Patterson liable in their official capacities under 42 U.S.C. § 1983 (Report and Recommendations, Doc. No. 45, PageID 1044.)

In its Objections, Convey It asserts:

> The complexity of the issues below appears to have caused the Chief Magistrate Judge to become lost on the road to justice[1]. Defendants *effectively* changed and repealed section 6111.04(A)'s exception from public nuisance for permitted facilities and thereby took legislative action, although Defendants did not follow the usual form for taking legislative action.

(Objections, Doc. No. 46, PageID 1046, emphasis sic.)  The Magistrate Judge had reasoned that because the Defendant Board of Health had no authority under Ohio law to declare the SST to be a public nuisance (per Judge Rice's interpretation of Ohio Revised Code § 6111.04(A)), the adoption of the offending Resolution did not work a change in the law.  Convey It argues § 6111.04 was "effectively changed and repealed" by the Resolution.  It offers the analogy of a speed limit set on a certain state route by the General Assembly at 35 mph, but the local sheriff takes down the 35 mph sign and puts up a 25 mph sign (Objections, Doc. No. 46, PageID 1047) .  Convey It says this means the sheriff has effectively changed the law just as the Board of Health did here.  Not so.  The sheriff has acted unlawfully and without authority.  It may be, as Convey It asserts,  that a motorist given a ticket for driving 30 mph on that route "will have to take action and incur expense to have the traffic court effectively change the law back to Ohio's original 35 MPH "legislative policy" or incur damage resulting from the ticket (a monetary fine) and lose the right to drive 35 MPH on the state route."  *Id*.  There is nothing unusual in that situation.  Anytime a law applier acts unlawfully, a person subject to that unlawful action may incur transaction costs in preventing the unlawful action

---

1 Perhaps the "road to justice" has not been properly de-iced.

from having an improper effect.  For example, it is not costless to file a motion to suppress in a criminal case even if the search is plainly unconstitutional.  But that does not make the search a "legislative" act of the searching police officers.

Convey It's first numbered Objection is that the Report misconstrues Ohio Revised Code § 6111.04 by somehow concluding it can be overruled by the Resolution because the Board of Health has the power to declare a public nuisance under Ohio Revised Code § 3707.01.  (Objections, Doc. No. 46, PageID 1048-1053.)  Again, not so.  The law of this case is that § 6111.04 is controlling over Ohio Revised Code § 3707.01 and nothing in the Report suggests the contrary.

In its second numbered Objection, Convey It argues the Magistrate Judge violated the *Erie* doctrine by "incorrectly construing the Ohio Supreme Court's holding in *Weber v. Board of Health, Butler County*, 148 Ohio St. 389, ¶ 3 of Syllabus (1947)."  (Objections, Doc. No. 48, PageID 1053.) The holding in *Weber*, as the Magistrate Judge continues to read it despite the Objections, is that the Butler County Board of Health violated the Ohio Constitution when it acted beyond the power delegated to it by the General Assembly by declaring unlawful the practice of feeding hogs on transported garbage.  Assuming the Clark County Board of Health violated the Ohio Constitution in this case by adopting the Resolution, that would not give rise to a cause of action under 42 U.S.C. § 1983 for violating the Contracts Clause or any other protection of the United States Constitution. An action under § 1983 is available only for violations of the federal Constitution, not state constitutions.

In its third numbered Objection, Convey It asserts the Magistrate Judge violated the Fed. R. Civ. P. 12(c) standard by finding as a matter of fact that Convey It had taken out of context the statement by an Ohio EPA employee that Clark County needed a "legislative fix" to solve its

5

perceived problem with the SST. (Objections, Doc. No. 46, PageID 1057.) Convey It asserts that under Rule 12(c) it is "entitled to the inferences" that the EPA officials were recommending local legislative action and that the action taken in adopting the Resolution must then have been a legislative action. Therefore, Convey It says "[i]t is for the jury to decide the context of the Ohio EPA administrative officials' statements." (Objections, Doc. No. 46, PageID 1058.)

The particular communications relied on are in Exhibits 6 and 7 to the Second Amended Complaint (Doc. No. 24). As they are quoted in Convey It's Response to the Motion (Doc. No. 34), they read in full:

> Language in the current stormwater permit issued to industrial sites suggests that covering salt piles is only required if there are discharges to 'surface waters of the state.' ....
>
> Unfortunately, I don't believe groundwater can be considered a 'surface water of the state' ... 'waters of the state' is one thing, but adding the word 'surface' means something else which possibly excludes groundwater all altogether, literally speaking. So the industrial permit may not be of much help here, though I believe from initial talks with the salt company it will make some effort to improve their operations. The problem from my end is if they balk at making changes, I'm not sure how much leverage I'd have since surface waters aren't being affected ....
>
> In lieu of stronger language in OEPA 's industrial stormwater permit, which won't be revised for 2 more years, it seems local efforts to either implement specific groundwater protection ordinances or zone for more appropriate land use around the city's wellfield might have more impact in the short term. Getting these sorts of ordinances implemented is like pulling teeth, I recognize, especially since the area in question is Moorfield Twp and not Springfield itself. But there's no guarantee that Ohio EPA's authority will be enhanced any time soon that would address this. Local initiatives that can be more quickly crafted and implemented might be the best way to head off any more problems.

(Doc. No. 24, Ex. 6, April 15, 2009, email from EPA's Cotton to Springfield's Dewell.)

> Assuming a legislative fix isn't going to happen any time soon that would give OEPA more clout, it might behoove relevant local authorities to begin discussions between themselves and then with Convey It (and possibly CSX) to see what other siting options exist. It's not my intention to pass off a problem to someone else, but the reality here is that OEPA regs cannot be counted on, at least in their current form, to guarantee protection of the acquifer.

(Doc. No. 24, Ex. 7, April 28, 2009, email from EPA's Cotton to Defendant Chatfield.)

As Convey It notes, it is entitled to all reasonable inferences from the pled facts.  It would certainly be a reasonable inferences from these two emails that the Ohio EPA official in question was recommending, in April, 2009, that local authorities consider a zoning change or an ordinance protecting the City of Springfield's wellfields.  Those would have been legislative changes enacted by a local legislature with the power to adopt zoning ordinances or other wellfield protection ordinances[2].  But there is neither pleading nor reasonable inference from pled facts  that the Board of Health had any zoning authority or that when it adopted the Resolution fourteen months later it was attempting to follow this recommendation of the EPA which was made to another governmental body or its representantive.  And certainly the "legislative fix" referred to in the second email is a legislative fix by the Ohio General Assembly – as a matter of law, no local body could adopt a "legislative fix" that "would give the Ohio EPA more clout."

In any event, whatever the Defendant Board of Health did in adopting the resolution was either legislative or administrative as a matter of law, not as a matter on factual inference from what was suggested to them by Ohio EPA officials.  If the Report is wrong on this point, it is wrong in its interpretation of *Wojcik v. City of Romulus*, 257 F.3d 600 (6th Cir. 2001).  If the District Court

---

[2] Convey It correctly points out that zoning changes are "manifestly a legislative act."  Response, Doc. No. 34, PageID 967, quoting *State, ex rel Edwards Land Co.,  v. Delaware County Bd. Of Elections*, 129 Ohio St. 3d 580, 591 (2011).  But the Resolution in no way purports to be or effect a zoning change and the Defendant Board of

disagrees with that interpretation, it would be an error of law, not a refusal to allow the jury to consider a reasonable inference.

In its fourth numbered Objection, Convey It asserts the Magistrate Judge "violated binding Sixth Circuit law by concluding that dismissing Convey It's Contract Clause claim does not leave Convey It without a remedy." (Objections, Doc. No. 46, PageID 1059.) Convey It misconstrues this portion of the Report as if were holding that Convey It had to exhaust its state court remedies before filing a § 1983 action. *Id.* Not so. It has long been held in virtually all[3] areas of § 1983 jurisprudence that there is no obligation to exhaust state remedies before bringing suit. *Patsy v. Board of Regents*, 457 U.S. 496 (1982). Nothing in the Report suggests the contrary. It is not that Convey It must exhaust its Ohio Revised Code § 2506.01 appeal **before** bringing its Contracts Clause claim in this Court. The Report recommends dismissing the Contract Clause claim regardless of what happens in the 2506.01 action because Convey It will never have a viable § 1983 action. It may, however, have a remedy by way of the § 2506.01 action for the adoption of the Resolution in apparently violation of Ohio Revised Code § 6111.04.

In its last argument, Convey It chastises the Magistrate Judge for suggesting that there is a public policy conflict in Ohio over storage of de-icing salt (Objections, Doc. No. 45, PageID 1060). There is no such conflict, Convey It says, because the Ohio General Assembly has definitively resolved any conflict by adopting Ohio Revised Code § 6111.04. If that is true, it is the province of the Ohio courts to say so. To put it another way, Defendant Board of Health's disregard of Ohio Revised Code § 6111.04 does not create a cause of action under the Contract Clause. Not every

---

Health is not a zoning authority.

[3] An exception would be the need to have convictions based on assertedly unconstitutional conduct reversed before one may bring a civil suit for damages. *Heck v. Humphrey,* 512 U.S. 477, 486-487(1994).

violation of state law by a state entity creates a violation of the United States Constitution.  Failure to abide by state law is not itself a constitutional violation.  *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985).  Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976);  *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976).  "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result on the constitutionalizing of every state rule, and would not be administrable."  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993).

For the foregoing reasons it is again respectfully recommended that Defendants' Motion for Partial Judgment on the Pleadings be granted.

June 26, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).